[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15039
Non-Argument Calendar
_____

Agency No. A079-428-591

VICTORIA MARKOVA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(September 19, 2013)

Before CARNES, Chief Judge, MARTIN and KRAVITCH, Circuit Judges.

PER CURIAM:

Victoria Markova, a native and citizen of Belarus, seeks review of the Board

of Immigration Appeals' order affirming the Immigration Judge's denial of her

motion to reopen and rescind her in absentia order of removal.  The IJ and BIA both concluded that Markova had failed to present sufficient evidence to overcome the presumption that she had received written notice of her removal hearing, which was sent to her address by regular mail.

I.

Markova was admitted into the United States on February 5, 2001, as a non-immigrant visitor with authorization to remain in the country until August 4, 2001. Markova long overstayed her visa and, in February 2007, she filed an application for adjustment of status to that of lawful permanent resident based on her marriage to Jerry Sloan, a United States citizen.  The United States Department of Homeland Security (DHS) denied that application on January 15, 2008, and ten months later — on November 22, 2008 — initiated removal proceedings against Markova by sending a Notice to Appear via regular mail to her apartment in Bal Harbour, Florida.  Less than two months later, on January 6, 2009, the immigration court mailed Markova a Notice of Hearing, which was scheduled for March 24, 2009. After she failed to appear at the scheduled removal hearing, the IJ found Markova removable for having remained in the country past her authorized date and issued an order of removal in absentia.  A copy of the removal order was then mailed to Markova's Bal Harbour address.

Nearly two years later, on January 21, 2011, Markova filed a motion to reopen and rescind her removal order, claiming that she had not received either the Notice to Appear or the Notice of Hearing even though she lived at the Bal Harbour address through March 2009.  She also alleged that she had only learned of the removal order after she married her new American husband, Huey Griffin, on December 28, 2010, and sought to adjust her immigration status in light of that marriage.  Markova submitted a personal affidavit in support of her motion to reopen, in which she asserted that did not receive the Notice to Appear or Notice of Hearing at her former address and that "[o]ther mail" sent to that address had been delivered to the wrong apartments, including an appointment notice related to her earlier application for adjustment of status.

The IJ denied the motion to reopen, finding that Markova had failed to present sufficient evidence to overcome the presumption that properly addressed notices sent by regular mail have been received.  The IJ, while acknowledging Markova's affidavit, emphasized that she had not provided any corroborating evidence of postal delivery problems at her former residence, including proof of such problems from the United States Postal Service or the building manager of the apartment complex.  The IJ additionally noted that Markova did not have an incentive to appear at her removal hearing because, at that time, her earlier

3

application for adjustment of status had been denied and she had yet to marry her current husband.

Markova appealed to the BIA, contending that the IJ improperly found that she had failed to provide sufficient evidence to overcome the presumption of receipt that attaches to notices sent by regular mail. Markova, for the first time, submitted additional affidavits from two of her former neighbors, both of whom asserted that they had received other tenants' mail in the past and did not always receive their own mail, at least not in a timely manner.

The BIA dismissed the appeal, agreeing with the IJ that Markova had failed to adequately rebut the presumption that a properly addressed notice sent by way of regular mail was received. The BIA explicitly considered Markova's affidavit, including her assertion of postal delivery problems, but it also noted that the Notice to Appear and Notice of Hearing were properly mailed to her address, that neither document had been returned as undeliverable, and that Markova did not appear to have an incentive to attend her removal hearing given the denial of her application for adjustment of status based on her earlier marriage. The BIA did not consider the affidavits from Markova's former neighbors, explaining that it would not consider evidence first introduced on appeal.

II.

4

We review the denial of a motion to reopen removal proceedings only for an abuse of discretion and our review is limited to "determining whether the BIA exercised its discretion in an arbitrary or capricious manner." Jiang v. U.S. Att'y Gen., 568 F.3d 1252, 1256 (11th Cir. 2009). Administrative factual findings, including whether an alien received notice of her removal hearing, are "conclusive unless a reasonable factfinder would be compelled to conclude to the contrary." See Lonyem v. U.S. Att'y Gen., 352 F.3d 1338, 1340 (11th Cir. 2003).

An alien who fails to attend a proceeding after written notice has been provided is subject to removal in absentia if the government establishes by "clear, unequivocal, and convincing evidence" that it gave written notice and that the alien is removable. 8 U.S.C. § 1229a(b)(5)(A). "[A] mailing to the last known address is sufficient to satisfy the [government's] duty to provide an alien with notice of a deportation proceeding." United States v. Zelaya, 293 F.3d 1294, 1298 (11th Cir. 2002). Once an in absentia order of removal has been issued, an alien may seek to reopen the proceedings and rescind that order within 180 days by demonstrating that the failure to appear was due to "exceptional circumstances," such as a serious illness or the death of a family member, or at any time by showing that she did not receive notice of the removal hearing.[1] 8 U.S.C. § 1229a(b)(5)(C), (e)(1). Where,

---

[1] Throughout her appellate brief, Markova conflates the two distinct bases for seeking rescission of an in absentia removal order — lack of notice and exceptional circumstances — by arguing that her alleged lack of notice of the removal hearing was "due to exceptional

5

as here, notice is sent by regular mail, the BIA presumes delivery and receipt of that notice if it was "properly addressed and mailed according to normal office procedures," though the presumption is weaker than when notice is sent by certified mail.  Matter of M-R-A-, 24 I. & N. Dec. 665, 673 (BIA 2008).  In evaluating whether an alien has rebutted the presumption of receipt by regular mail, the BIA and IJ must consider all relevant evidence and "may consider a variety of factors," including:  (1) affidavits from the alien and "other individuals who are knowledgeable about the facts relevant to whether notice was received"; (2) whether the alien exercised due diligence upon learning of the in absentia removal order; (3) any prior applications for immigration relief that would indicate an incentive to appear at the removal hearing; (4) the alien's attendance at earlier immigration hearings; and (5) any other circumstances indicating possible non-receipt of notice.  Id. at 674.

Markova, invoking the requirements of 8 U.S.C. § 1229a(b)(5)(A), first contends that the BIA and IJ erred in finding that she had received notice of her removal hearing because there was "no clear, unequivocal and convincing evidence" of such receipt, particularly in light of her own sworn statements.

---

circumstances, the failure of regular mail to be properly delivered to the correct apartment."  To the extent that Markova is seeking to independently invoke the "exceptional circumstances" ground for seeking rescission, which we seriously doubt given the specific nature of her arguments, we lack jurisdiction to consider the issue because she did not properly raise it before the BIA.  See Amaya-Artunduaga, 463 F.3d 1247, 1250 (11th Cir. 2006).

Markova's argument misconstrues the relevance of § 1229a(b)(5)(A) to the circumstances of this case and improperly attempts to shift the burden of proof to the government. Once the order of removal was entered based on evidence that notice was mailed to Markova's address, the government had no additional obligation under § 1229a(b)(5)(A) to establish by clear, unequivocal, and convincing evidence that Markova actually received that notice. See 8 U.S.C. § 1229a(b)(5)(A); Zelaya, 293 F.3d at 1298. Instead, Markova bore the burden of presenting sufficient evidence to overcome the presumption of receipt that attaches to properly addressed notices sent by regular mail. See 8 U.S.C. § 1229a(b)(5)(C)(ii) (providing that an in absentia removal order may be rescinded "if the alien demonstrates that [she] did not receive notice"); Matter of M-R-A-, 24 I. & N. Dec. at 673.

Markova also contends that her affidavit and those of her former neighbors were sufficient to demonstrate that she did not receive notice of the removal hearing, and that the BIA and IJ failed to consider and address those affidavits, particularly as they relate to postal delivery problems at her former apartment complex.[2] Because Markova first submitted the neighbors' affidavits on appeal to the BIA, the IJ had no occasion to consider them and the BIA was entitled to

---

[2] Markova also challenges the facial validity of the hearing notice mailed to her former address, contending that it did not expressly state that it was sent by the Attorney General, as purportedly required by § 1229a(b)(5)(A). Because Markova did not exhaust her administrative remedies with respect to that claim by raising it before the BIA, we lack jurisdiction to consider it. See Amaya-Artunduaga, 463 F.3d at 1250.

7

disregard them in evaluating whether she had presented sufficient evidence to overcome the presumption of receipt. See Matter of Fedorenko, 19 I. & N. Dec. 57, 74 (BIA 1984) ("The Board is an appellate body whose function is to review, not to create, a record."); 8 C.F.R. § 1003.1(d)(3)(iv) (providing that a party seeking to introduce additional evidence to the BIA, which would require further factfinding, must file a motion to remand the case to the IJ).

Contrary to Markova's contentions, the BIA and IJ explicitly considered her affidavit, including her assertion of past delivery problems with her mail, but found that her uncorroborated statements were not enough to overcome the presumption that she had received notice of her removal hearing. The determination that Markova's sworn statements, standing alone, were not sufficient to overcome the presumption of receipt was not arbitrary or capricious. See Joshi v. Ashcroft, 389 F.3d 732, 735 (7th Cir. 2004) ("[A] bare, uncorroborated, self-serving denial of receipt, even if sworn, is weak evidence."); Kozak v. Gonzales, 502 F.3d 34, 37 (1st Cir. 2007) (same). That is particularly true given Markova's assertions throughout these proceedings that she failed to receive not one, not two, but three separate immigration documents sent to her apartment by regular mail — the Notice to Appear, the notice of her removal hearing, and her final order of removal. Even accepting as true her statement that she had experienced mail delivery problems at her former apartment, the record simply does not compel a

8

finding that the relevant notices, which were sent on different dates, were each delivered to some other tenant's apartment.

The BIA, in further support of its finding, also emphasized that Markova did not appear to have any incentive to attend the March 2009 removal hearing because her application for adjustment of status based on her marriage to Jerry Sloan had already been denied and she had yet to marry her current husband. Although Markova contends that she had "every reason to appear" at the March 2009 removal hearing, she does not explain why that it is so and there is no evidence in the record to support her contention.

Markova suggests that, at the very least, her affidavit was sufficient to entitle her to an evidentiary hearing for the immigration court to consider the veracity of her sworn statement that she did not receive notice of the March 2009 removal hearing. She relies on the Ninth Circuit's decision in Salta v. I.N.S., 314 F.3d 1076, 1079 (9th Cir. 2002), which held that where an alien "actually initiates a proceeding to obtain a benefit" and "has no motive to avoid the hearing," an alien's sworn affidavit that she did not receive notice of the hearing entitles her to "an evidentiary hearing to consider the veracity of her allegations." The underlying rationale of the Ninth Circuit's decision, needless to say, is that an alien who initiates an immigration proceeding for her own benefit has a strong incentive to attend any relevant hearings, making it far more likely that a failure to appear was

actually due to a lack of notice.  Markova, however, did not initiate the removal proceedings against her or stand to benefit from those proceedings, which makes Salta and its underlying rationale wholly inapplicable to the facts of her case.  As the Seventh Circuit has keenly observed, the intended recipient of a notice of removal proceedings "has a strong incentive to lie" about the lack of notice and, unfortunately, "[n]othing is simpler than submitting an affidavit in which one attests that one didn't receive a particular piece of mail."  Joshi, 389 F.3d at 735–36.

Because Markova has not shown that the BIA and IJ abused their discretion in denying her motion to reopen and rescind her in absentia order of removal, we deny her petition for review.

**PETITION DENIED.**

10