# United States Court of Appeals
## For the First Circuit

No. 03-2631

SUZE MAINDROND,

Petitioner,

v.

JOHN ASHCROFT, Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Selya, and Lynch, <u>Circuit Judges</u>.

<u>Stephen A. Lagana</u> and <u>Lagana & Associates</u> on brief for petitioner.

<u>Julia Doig Wilcox</u>, Senior Litigation Counsel, Office of Immigration Litigation, <u>Peter D. Keisler</u>, Assistant Attorney General, Civil Division, and <u>David M. McConnell</u>, Deputy Director, on brief for respondent.

October 6, 2004

**LYNCH**, <u>Circuit Judge</u>. Suze Maindrond, a Haitian, entered the United States at Miami, Florida, on November 5, 2000, by presenting a fraudulent passport. She requested asylum and was referred to the Immigration Court for an asylum hearing. The Immigration Judge (IJ) denied asylum, the Board of Immigration Appeals (BIA) affirmed, and then denied a motion to reopen. She now petitions for review of the denial of the motion to reopen. We affirm the BIA.

**I.**

Maindrond's hearing before an IJ was held in Boston, Massachusetts, on December 13, 2001. During the hearing, Maindrond testified, through a translator, that she was born on January 22, 1961, in Lazile, Haiti. She and her brother were members of a group called "Espace de Concertation" (Space for Consortation). She testified that at some point in January of 2000 (she gave conflicting dates), four people came to her house. Two of them beat her brother while the other two beat her, and her brother was eventually kidnaped. She testified that she escaped from the house and ran away to Port-au-Prince, where she hid at her sister's house. She claimed that the men who were after her were the "Lavalas Party." She testified that after six months in Port-au-Prince, she "knew that ... they were after [her] to hurt [her], kill like [her] brother." She obtained a visa to go to St. Maarten

and went there on July 4th; from there she then entered the United States illegally.

The IJ, in an oral decision, denied Maindrond's applications for asylum and withholding of removal. The IJ found Maindrond's testimony about the incident in January "conflicting" and "extraordinarily vague," and determined that she failed to demonstrate past persecution. The IJ noted that there was no corroborating evidence for Maindrond's purported activities in Espace de Concertation and that she "had difficulty defining exactly what it was she did with the political party." Maindrond's written pleadings to the Immigration Court also applied for protection under the Convention Against Torture (CAT). This claim was not asserted at the hearing, and the IJ did not specifically address it in the oral decision even though his summary of the oral decision contained a denial of the CAT claim.

Maindrond appealed the IJ's decision to the BIA. She sought review of the denial of withholding of removal and of asylum, but did not raise the CAT claim. On January 8, 2003, the BIA affirmed the IJ's decision without opinion.

On April 28, 2003, Maindrond filed a motion to reopen with the BIA, seeking an adjudication of her request for CAT protection. On November 12, 2003, the BIA denied the motion to reopen on two grounds: 1) Maindrond had waived the CAT issue by not raising it on direct appeal, and 2) Maindrond did not establish

prima facie eligibility for CAT protection. Maindrond now petitions this court for review of the denial of the motion to reopen.

## II.

The BIA's denial of a motion to reopen is reviewed for abuse of discretion. Toban v. Ashcroft, No. 03-1058, 2004 WL 2106346, at *3 (1st Cir. 2004); Elien v. Ashcroft, 364 F.3d 393, 395 (1st Cir. 2004). We will find an abuse of discretion "where the BIA misinterprets the law, or acts either arbitrarily or capriciously." Toban, 2004 WL 2106346 at *3 (quoting Wang v. Ashcroft, 367 F.3d 25, 27 (1st Cir. 2004)). Since the BIA offered two rational explanations for the denial of the motion to reopen, it has not acted arbitrarily and capriciously, and there was no abuse of discretion.

A. Waiver

Under the applicable regulations, "in order to avoid summary dismissal," "the [applicant's Notice of Appeal] must specifically identify the findings of fact, the conclusions of law, or both, that are being challenged." 8 C.F.R. § 1003.3(b). As has been noted, Maindrond made no argument concerning protection under the CAT at her hearing before the IJ and appeared to have abandoned the claim. In her notice of appeal to the BIA, Maindrond asked that "the decision of the Immigration judge be overturned and [that she] be granted asylum." But no mention was made in the notice or

-4-

her supporting brief of the CAT claim. She also concedes in her petition before this court that "prior counsel failed to raise [the CAT] issue in Petitioner's appeal [to the BIA]." The BIA correctly concluded that the CAT claim was waived. See Matter of Edwards, 20 I. & N. Dec. 191, 196 n.4 (BIA 1990).

Maindrond argues that under established policies set forth in prior BIA decisions, her failure to raise the CAT issue on appeal to the BIA was not a knowing waiver of her right and did not foreclose her from raising it on the motion to reopen. See Matter of Samai, 17 I. & N. Dec. 242, 243 (BIA 1980) (objection raised for first time on appeal concerning improper notice was not untimely). But Samai involved an appeal to the BIA, not a motion to reopen, and the applicant alien there was unrepresented by counsel, which led to the BIA's conclusion that his failure to raise a timely objection at the hearing was not a knowing waiver. See id.; see also 8 C.F.R. 1003.2(c)(1) (a motion to reopen to consider a new claim for relief may be granted if it appears that the alien's right to apply for such relief was not explained fully to him or her and the alien was not given an opportunity to apply for such relief at the former hearing). In contrast, Maindrond was represented by counsel at the original hearing before the IJ and also on appeal. The BIA did not depart from established policies and did not abuse its discretion.

B. Failure to Establish Prima Facie Case

The BIA's alternative ground for its denial of Maindrond's motion to reopen -- that she failed to establish her prima facie eligibility for protection under the CAT -- was also not an abuse of discretion.

An alien is eligible for protection under the CAT if he or she can prove "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). "A motion to reopen proceedings shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material." Id. § 1003.2(c)(1).

Along with her motion to reopen, Maindrond presented the 2002 Annual Report of Amnesty International on Haiti, a few Human Rights Watch articles on human rights developments in Haiti, and an Amnesty International press release dated December 10, 2002. While there may be situations in which articles on changed country conditions may establish the new facts necessary to make out a prima facie case, this is not one of them. None of the articles specifically addressed the possibility that Maindrond would be tortured upon return to Haiti or dealt with the events that she testified about, and there was no affidavit setting forth any evidence to support her claim. In light of what the IJ supportably characterized as her "extraordinarily vague" and "conflicting" testimony at the hearing before the IJ, there was nothing in the

record to support her claim for protection under the CAT.  The BIA did not abuse its discretion in denying her motion to reopen because she did not establish prima facie eligibility under CAT. See Toban, 2004 WL 2106346, at *4 (denial of motion to reopen to consider CAT claim for failure to present prima facie case was not abuse of discretion where applicant alien did not present detailed evidence that he will be tortured in the future or explain who will torture him and what mistreatment he expects to suffer).

## III.

The decision of the BIA is **affirmed**.